IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATALY LUNA-ACOSTA, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:25-CV-00008 |
| | § | |
| TARRANT COUNTY COLLEGE DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Nataly Luna-Acosta, hereinafter called Plaintiff, complaining of and about Tarrant County College District, hereinafter called Defendant, and for cause of action shows unto the Court the following:

**PARTIES AND SERVICE**

1. Plaintiff Nataly Luna-Acosta is a citizen of the United States and the State of Texas and resides in Tarrant County, Texas.

2. Defendant Tarrant County College is a Texas state agency with its principal place of business at 300 Trinity Campus Circle, Fort Worth, Texas 76102 or wherever it may be found. *Issuance of a summons is hereby requested.*

**JURISDICTION**

3. Jurisdiction is proper in this Court because this case has federal question jurisdiction over civil rights matters under 28 U.S.C. §§ 1441, 1443, and 1446. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

4. This Court has supplemental jurisdiction over state law claims discussed below

under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

5. This is an employment action brought under the Americans with Disabilities Act of 1990 and its amendments of 2008 (ADA), Rehabilitation Act of 1973, and Chapter 21 of the Texas Labor Code, all of which prohibit employment discrimination for persons with disabilities.

## CONDITIONS PRECEDENT

6. All conditions precedent to jurisdiction have occurred or been complied with as a charge of discrimination was filed with the Equal Employment Opportunity Commission within three hundred days of the acts complained of herein, and Plaintiff's Complaint is filed within sixty days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## FACTS

7. At all relevant times Plaintiff was employed by Defendant.

8. Plaintiff began her employment with Defendant on June 20, 2018, as a Human Resources Specialist.

9. On June 20, 2022, Plaintiff was involved in a car accident that left her with Post-Concussion Syndrome (PCS)

10. Post-Concussion Syndrome (PCS) causes a variety of symptoms which Plaintiff exhibited included, headache, dizziness, difficult concentrating, confusion, memory problems, balance issues, foggy mentality, sensitivity to light and noise, anxiety, depression, irritability, nausea, and vomiting.

11. PCS can be treated with medications, physical therapy, and behavioral therapy and Plaintiff pursed treatment in these manners.

12. During her time with PCS, Plaintiff exercised her FMLA rights and coverage during part of her recovery process.

13. In November 2022, Plaintiff was cleared to return to work with reasonable accommodation.

14. Defendant refused to provide the accommodation required by licensed medical doctors.

15. As such, Plaintiff's only option was to take unpaid personal leave of absence that Defendant would need to approve. Defendant said this was the only option or she would be terminated.

16. Plaintiff fulfilled all Defendant's request and was granted unpaid personal leave of absence.

17. On January 11, 2023, Vanessa Jones, Director of Employee Relations, sent Plaintiff a letter requesting to harass and meet with her about her absence.

18. Ultimately, Plaintiff met with Jones on January 19, 2023, where Defendant attacked and retaliated against Plaintiff for driving during her children to school and to the grocery store during Plaintiff's FMLA time.

19. Defendant also confronted Plaintiff with an investigation that Defendant had sanctioned, paid with taxpayer money, and angrily and in a hostile manner used to intimidate Plaintiff.

20. Defendant used local taxpayer money and funds to hire and support the stalking, following, harassment, and video recording of Plaintiff as she did her daily required activities including taking her children to school and buying groceries to feed her family.

21. Plaintiff was utterly shocked and frightened that Defendant had sanctioned such an

invasion of privacy, stalking, and waste of taxpayer funds.

22.     Defendant used this "investigation" to bully Plaintiff and scare, threaten, and intimidate Plaintiff all the while accusing her of fraud and criminal activity.

23.     Throughout the entire process, Plaintiff fulfilled all Defendant's request for medical records, reports, and requests. At all times, Plaintiff followed her Dr.'s orders regarding her care and treatment.

24.     Ultimately, Defendant wrongfully terminated Plaintiff on April 17, 2023, citing pre-text reasons of driving her vehicle while on FMLA during her official FMLA sanctioned time.

## ADA - DISABILITY DISCRIMINATION AND FAILURE-TO-ACCOMMODATE CLAIMS

25.     Plaintiff incorporates all preceding paragraphs herein.

26.     The Americans with Disabilities Act of 1990 (ADA) along with the Americans With Disabilities Act Amendments Act of 2008 (ADAAA) prohibit an employer from 'discriminat[ing] against a qualified individual on the basis of disability,' by, among other things, terminating an individual's employment." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016) (alteration in original) (quoting 42 U.S.C. § 12112(a)). "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability*." E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (alteration in original) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).

27.     The ADA also "requires an employer to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Delaval*, 824 F.3d at 481 (quoting 42 U.S.C. § 12112(b)(5)(A)). To prevail on a failure-to-accommodate claim,

the plaintiff must show "(1) [he] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist*, 730 F.3d at 452.

28. A plaintiff can establish that he is "qualified" by showing that "either (1) [he] could perform the essential functions of the job in spite of [his] disability," or "(2) that a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job." *LHC Grp.*, 773 F.3d at 697 (quoting *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir.1996)). "Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave." *Delaval*, 824 F.3d at 481. Furthermore, reassignment to a different job may be a reasonable accommodation, but "[t]he plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (citation omitted); *see also Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant.").

29. The case law is clear. A plaintiff must establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its employment decision. If the defendant articulates a legitimate nondiscriminatory reason, then, the plaintiff, in order to prevail, must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

30. Here, Plaintiff meets the three-prong test to establish a prima facie claim of discrimination about the ADA. First, it is clear Plaintiff has a disability. She was diagnosed with

PCS as the result of an automobile accident. Per Dr.'s orders she was to not work and upon work be given reasonable accommodation.

31. Secondly Plaintiff was qualified for the position. Plaintiff had been working at Tarrant County College District since 2018 with no issues and no problems as a Human Resources Specialist. This was several years before suffering her injury. During that time, she worked efficiently and completed her job duties as required.

32. Finally, Plaintiff meets the third prong because Defendant wrongfully terminated Plaintiff in April 2023.

33. Plaintiff also prevails on a failure-to-accommodate claim. First, Plaintiff is a qualified individual with a disability. While she was not disabled during his initial hire, Plaintiff became disabled while working at Tarrant County College District.

34. Next, Plaintiff made Defendant aware of her disability, but it was initially brushed aside. When Defendant did take it seriously, they refused to accommodate her telling her she would only qualify for an unpaid leave of absence or should be terminated.

35. Finally, Defendant made zero accommodations to help with Plaintiff's medical condition and Dr.'s requirements, instead deciding to terminate her before even allowing her back to work.

36. Defendants, by and through their agents, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's disability in violation of the Americans with Disabilities Act. The unlawful employment practices of Defendants, specifically terminating Plaintiff because of her disability, the increased scrutiny, and harassment,

and wrongful disciplinary action had a disparate and adverse impact on Plaintiff. Such employment practices were not based on any reasonable factor other than disability.

## CHAPTER 21 TEXAS LABOR CODE - DISABILITY DISCRIMINATION CLAIMS

37. Plaintiff incorporates all preceding paragraphs.

38. Plaintiff asserts a violation of Tex. Lab. Code 21.051 under the Texas Commission on Human Rights Act (TCHRA). The code states:

> "An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee."

39. Incorporate of all paragraphs herein, Plaintiff seeks to file a claim under the Texas Labor Code asserting the same factors used in the ADA claim. Plaintiff was classified as disabled because of her PCS injury, they adversely affected her employment by terminating and harassing her, and finally ending up terminating her based on her disability and ended up giving such employment to a non-disabled person.

## ADA - RETALIATION CLAIMS

40. Plaintiff incorporates all preceding paragraphs.

41. The ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

42. *McDonnell Douglas* provides the burden-shifting framework for claims of unlawful retaliation under the ADA. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1112 (5th Cir. 1998). It says that "to show an unlawful retaliation, a plaintiff must establish a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 348−49 (5th Cir. 2019) (quoting *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)); *see also Credeur*, 860 F.3d at 797 (same). If "the plaintiff has established a prima facie case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action." *Nall*, 917 F.3d 335, 349 (5th Cir. 2019) (quoting Seaman, 179 F.3d at 301). If the defendant does so, "the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation. Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id*.

43. Here, Plaintiff engaged in activity protected by the ADA. Plaintiff filed a complaint and accommodation request because of her disability which is protected to file a complaint or grievance when an entity is not following legal ethical employment practices.

44. Plaintiff was subsequently not taken seriously and then terminated under pre-text.

45. All of these efforts to harass Plaintiff ultimately resulted in her being terminated. Had she not filed the accommodation request or disability request for time and ask for accommodations for his disability, Defendant would not have terminated Plaintiff.

46. Plaintiff suffered damages for which Plaintiff herein sues.

**CHAPTER 21 TEXAS LABOR CODE – HOSTILE WORK ENVIRONMENT**

47. Plaintiff incorporates all preceding paragraphs herein as if set forth at length.

48. Plaintiff asserts a violation of Tex. Lab. Code 21.051 under the Texas Commission on Human Rights Act (TCHRA). The code states:

> "An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> (3) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (4) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee."

49. A hostile-work-environment claim is designed to address conduct that is so severe or pervasive that it destroys an employee's opportunity to succeed in the workplace. *Gardner*, 414 S.W.3d at 382 (citing *City of Houston v. Fletcher*, 166 S.W.3d 479, 489 (Tex. App. Eastland 2005, pet. denied)).

50. To succeed on a TCHRA claim of hostile work environment, the complained-of conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Waffle House, Inc.*, 313 S.W.3d at 806 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

51. Plaintiff was subject to a hostile workplace because of the severe and pervasive bullying, ridicule, conspiring and harassment, including but not limited to the incidents that occurred beginning in January 2023 with Jones accusing Plaintiff of FMLA fraud, insurance fraud, and not having a disability. There was also constant harassment by the Defendants prior to that by Jones when they refused accommodations and refused to allow her to return to work under those accommodations.

52. Additional harassment resulted in the stalking of Plaintiff by following her everywhere on her personal time, costing Defendant and local taxpayers thousands upon thousands of dollars to have investigators follow Plaintiff as she drove to drop off her kids at school. None of the surveillance is or was relevant as it did not relate to Defendant's discriminatory practices and failure to accommodate.

53. Defendants had actual knowledge of the hostile workplace Plaintiff endured when she made repeated comments to management. Defendants failed to properly investigate or otherwise resolve this hostile work environment. Instead, they chose to spend local taxpayer money hiring people to follow Plaintiff around the Cirt of Fort Worth. The actions by Defendants and its employees, or lack thereof, created an abusive working environment that ultimately resulted in Plaintiff's wrongful termination.

## RESPONDEAT SUPERIOR AND RATIFICATION

54. Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that the Defendants' officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, or representatives.

## DAMAGES

55. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

   a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

   b. Back pay from the date that Plaintiff was denied pay and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

    c. All reasonable and necessary costs incurred in pursuit of this suit;

    d. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

    e. Inconvenience;

    f. Interest;

    g. Mental anguish in the past;

    h. Mental anguish in the future; and

    i. Loss of benefits.

## SPECIFIC RELIEF

56. Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

    a. Neutral job reference; and

    b. An injunction against Defendants prohibiting discriminatory employment practices on the basis of disability and other protected categories.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Nataly Luna-Acosta, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

## PLAINTIFF HEREBY DEMANDS TRIAL BY JURY

Respectfully submitted,

/s/ Ali Crocker Russell
Ali Crocker Russell

State Bar No. 24098868
ali@cralawfirm.com

CROCKER RUSSELL & ASSOCIATES
200 W. Oak Street
Mansfield, Texas 76063
Tel: (817) 482-6570
Fax: (682) 232-1850

**ATTORNEY FOR PLAINTIFF**

Ali Crocker Russel